# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

| | |
|---|---|
| ANGELA R. CONAWAY,<br>　　　　　　Appellant, | DOCKET NUMBER<br>CH-0752-16-0166-I-2 |
| 　　　　v. | |
| DEPARTMENT OF COMMERCE,<br>　　　　　　Agency. | DATE: September 22, 2022 |

## THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Angela R. Conaway, Piketon, Ohio, pro se.

Frances C. Silva, Esquire, Washington, D.C., for the agency.

### BEFORE

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member
Tristan L. Leavitt, Member

### FINAL ORDER

¶1　　The appellant has filed a petition for review of the initial decision, which affirmed the agency's action removing her. For the reasons discussed below, we GRANT the petition for review, REVERSE the initial decision in part, and DO NOT SUSTAIN the appellant's removal. However, we AFFIRM the initial

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

decision in part to the extent it found that the appellant failed to establish disability discrimination.

## BACKGROUND

¶2    Prior to the removal at issue in this appeal, the appellant was employed by the agency's Census Bureau as a GS-6 Field Supervisor. *Conaway v. Department of Commerce*, MSPB Docket No. CH-0752-16-0166-I-1, Initial Appeal File (IAF), Tab 6, Subtab 4h. In addition to her supervisory duties, she occasionally conducted interviews with survey respondents. *Id.*, Subtab 4y. The agency reviewed several of the appellant's cases in March 2014 as part of its routine quality control measures and discovered discrepancies in three of her Current Population Survey (CPS) cases.[2] *Id.*, Subtab 4r. On April 2, 2014, the appellant's second-level supervisor issued her a "5-day letter" notifying her of the discrepancies and permitting her an opportunity to respond. *Id.* In relevant part, the letter stated that the appellant submitted Case #1 as a completed interview but that, upon reinterview, the respondent denied speaking to the appellant on the date in question. *Id.* The appellant responded to the 5-day letter, stating that she spoke to the Case #1 respondent at about 9:38 p.m. on that date and that it was the household's seventh interview. *Id.*, Subtab 4q. She explained that the respondent was angry that she had been called again and stated that "nothing had changed" since her last interview. *Id.* She further explained that she entered some information based on her "previous knowledge of the case that [the respondent and her spouse] both usually worked 50 hours a week and were at the same job doing the same thing" and entered "refused" in other fields regarding the number of hours worked in the current week and a prior week. *Id.*

---

[2] CPS surveys collect information regarding the labor force, such as where the respondent and other household members work, their occupation, number of hours they worked in the survey week, and how many hours they usually work per week. *Conaway v. Department of Commerce*, MSPB Docket No. CH-0752-16-0166-I-2, Refiled Appeal File (RAF), Tab 14, Hearing Compact Disc (HCD) (testimony of a Field Supervisor).

¶3    On June 19, 2014, the agency proposed to remove the appellant on the basis of one charge of "Providing False Information Regarding Census Bureau Questionnaires" supported by one specification alleging that, on March 22, 2014, she provided false information in CPS Case #1.[3] *Id.*, Subtab 4*l*. The background section of the proposal notice stated that, upon reinterview of Case #1, the survey respondent claimed that she did not speak to the appellant in March 2014. *Id.* In an apparent alternative, the background section further stated that the appellant "submitted an interview as complete even though [she] did not ask the respondent all survey questions as worded" pursuant to CPS Interviewer Manual, Section 2.2.1, which requires that interviewers ask questions exactly as worded so that they will yield comparable results. *Id.*

¶4    The appellant submitted a written response to the deciding official attesting that she spoke to the Case #1 respondent in March 2014 and denying that she falsified any data. IAF, Tab 6, Subtab 4j, part 1. She stated that she had conducted five prior interviews with this respondent, who had requested not to be contacted further and who, on the date in question, was very angry at being called again. *Id.* The appellant stated that she verified that the respondent and her spouse still worked at the same place but did not ask what job they did or how many hours they worked because she already knew that information from the prior interviews and because the respondent had said that "nothing would change unless [she or her spouse] died." *Id.* The appellant stated that she put "refused" on the number of hours the respondent and her husband had worked that week and ended the interview. *Id.*

¶5    In a decision letter dated September 2, 2014, the deciding official observed that the appellant admitted in her response to the proposal notice that she

---

[3] The administrative judge determined that, although the proposal notice and other references in the record indicate that the alleged misconduct occurred on March 22, 2014, the evidence and testimony established that the alleged misconduct actually occurred on March 25, 2014. RAF, Tab 16 at 3 n.3; IAF, Tab 6, Subtab 4s. We agree.

submitted answers for Case #1 even though she did not ask the respondent the questions as worded on the questionnaire, as required by agency policy. IAF, Tab 6, Subtab 4i. Thus, she found that the reason for the proposed removal was fully supported by the evidence and imposed the appellant's removal, effective September 5, 2014. *Id.* The appellant amended her pending equal employment opportunity (EEO) complaint to include a claim relating to her removal, which the agency's Office of Civil Rights (OCR) accepted for investigation. *Id.*, Subtab 4b, part 1. On November 13, 2015, the OCR issued a final agency decision finding no discrimination. *Id.*, parts 1-2.

¶6    The appellant then appealed her removal to the Board, raising affirmative defenses of harmful procedural error and disability discrimination.[4] IAF, Tab 1. The administrative judge dismissed the appeal without prejudice, and the appeal was automatically refiled on November 21, 2016. IAF, Tab 13; *Conaway v. Department of Commerce*, MSPB Docket No. CH-0752-16-0166-I-2, Refiled Appeal File (RAF), Tabs 1-2. After holding the appellant's requested hearing, the administrative judge issued an initial decision finding that the agency proved the charge, nexus, and the reasonableness of the penalty and that the appellant failed to prove her affirmative defenses. RAF, Tab 16, Initial Decision (ID) at 6-23.

¶7    The appellant has filed a petition for review of the initial decision, and the agency has responded in opposition. Petition for Review (PFR) File, Tabs 1, 3.

---

[4] The appellant also appealed an alleged constructive suspension and a reduction in pay. The administrative judge issued an initial decision dismissing that appeal for lack of jurisdiction. *Conaway v. Department of Commerce*, MSPB Docket No. CH-0752-16-0165-I-1, Initial Decision (Oct. 13, 2016). A petition for review of the decision in that case is currently pending with the Board.

**ANALYSIS**

The agency did not prove the charge of providing false information regarding census bureau questionnaires.

¶8 An agency is not required to affix a label to a charge but may simply describe the actions that constitute the misbehavior in narrative form in its charge letter. *Hollingsworth v. Department of the Air Force*, 121 M.S.P.R. 397, ¶ 4 (2014). If, however, the agency chooses to label an act of alleged misconduct, then it must prove the elements that make up the legal definition of the charge, if any. *Id.* As noted above, the agency removed the appellant on the basis of one charge of providing false information regarding census bureau questionnaires supported by one specification alleging that she provided false information in Case #1. IAF, Tab 6, Subtabs 4i, 4*l*. A charge of providing false information is considered to be a charge of falsification. *See, e.g.*, *Leatherbury v. Department of the Army*, 524 F.3d 1293, 1297, 1300 (Fed. Cir. 2008) (construing charges of "filing a false claim against the government" and "filing a false travel voucher" as charges of falsification); *Rackers v. Department of Justice*, 79 M.S.P.R. 262, 266, 278 (1998) (considering a charge of "providing false information in official documents" as one of falsification), *aff'd*, 194 F.3d 1336 (Fed. Cir. 1999). To establish a charge of falsification, the agency must prove the following by preponderant evidence: (1) the appellant supplied incorrect information; and (2) she did so knowingly with intent to defraud, deceive, or mislead the agency for her own private material gain.[5] *Boo v. Department of Homeland Security*, 122 M.S.P.R. 100, ¶¶ 10-12 (2014).

¶9 The administrative judge found that the appellant made contact with the household in Case #1 on March 25, 2014, but that she failed to ask questions of the respondent exactly as worded on the questionnaire in violation of agency

---

[5] Preponderant evidence is defined as the degree of relevant evidence that a reasonable person, considering the record as a whole, would accept as sufficient to find that a contested fact is more likely to be true than untrue. 5 C.F.R. § 1201.4(q).

policies. ID at 9-10. He determined, however, that the appellant's failure to ask the questions as worded on the questionnaire was not dispositive in the falsification charge because such conduct constitutes failure to follow survey procedures, which the agency explicitly distinguished from data falsification. ID at 11. Nonetheless, he concluded that the appellant's concession during cross examination that she inputted data that she did not obtain during the March 25, 2014 interview—specifically, hours usually worked each week for the respondent (42 hours) and her spouse (48 hours)—was sufficient to establish that she knowingly provided false information with the intent to deceive the agency. ID at 14-15. He further found that she did so for her own private material gain because completing surveys affected her performance appraisal. ID at 15.

¶10     Although the agency did not provide a copy of the Case #1 survey containing the alleged false data, the trace file[6] reflects that the appellant entered a value of "42" into the survey at 9:02:43 p.m. on March 25, 2014, and a value of "48" at 9:02:53 p.m. IAF, Tab 6, Subtab 4r at 16. At the hearing, the appellant testified that these amounts referred to the number of hours the respondent and her husband usually worked each week and that she obtained these numbers from the previous interview and entered them into this survey based on the respondent's assertion that "nothing had changed." RAF, Tab 14, Hearing Compact Disc (HCD) (testimony of the appellant). Thus, although it is clear that the appellant entered information into the survey for Case #1 that she did not obtain from the March 25, 2014 interview, the agency has not provided any evidence suggesting that this information was incorrect, as required to prove a charge of falsification. *Boo*, 122 M.S.P.R. 100, ¶ 10. To the contrary, it is likely this information is correct given the appellant's unrebutted testimony that the respondent provided her this information during a previous interview and told her

---

[6] A trace file is a record of each keystroke made by an interviewer during the course of an interview, along with the date and time an interviewer spends on each screen. ID at 4 n.4 (quoting RAF, Tab 14, HCD (testimony of a Field Supervisor)).

that "nothing had changed" during her phone conversation with the respondent on March 25, 2014. HCD (testimony of the appellant). Moreover, even if this information was incorrect, we find that the appellant had a reasonable good faith belief in the truth of the information, which precludes a finding that she acted with deceptive intent. *See Leatherbury*, 524 F.3d at 1300-01. Therefore, we find that the agency has not proven a charge of falsification.

¶11 Although the appellant's handling of the Case #1 survey may have been contrary to established procedures or otherwise improper, the agency did not assert such a charge against her.[7] Rather, as stated above, the agency charged her with providing false information in Case #1. IAF, Tab 6, Subtab 4*l*. The Board is required to review the agency's decision on an adverse action solely on the grounds invoked by the agency and may not substitute what it considers to be a more adequate or proper basis. *Gottlieb v. Veterans Administration*, 39 M.S.P.R. 606, 609 (1989). Therefore, we cannot sustain a charge of failure to follow survey procedure against the appellant, and such failure cannot serve as a basis to sustain a charge of falsification.

¶12 In light of the foregoing, we reverse the initial decision in part and do not sustain the appellant's removal.[8]

---

[7] As noted above, the background section of the proposal notice stated that the appellant "submitted an interview as complete even though [she] did not ask the respondent all the survey questions as worded as required" and "entered data into the instrument for CPS case [#1] that was not provided by the respondent." IAF, Tab 6, Subtab 4*l*. These statements describe the conduct underlying the agency's charge and do not state a separate charge against the appellant. *Id.*; *see Atchley v. Department of the Army*, 46 M.S.P.R. 297, 302 n.5 (1990) (finding that a description of the factual basis for the charge was intended to support the charge and did not constitute a separate charge).

[8] Because we do not sustain the charge, we need not address the appellant's arguments on review regarding penalty and harmful procedural error. PFR File, Tab 1 at 4-7. We further do not address her arguments raised for the first time on review that the agency committed prohibited personnel practices when it did the following: failed to inform her of her rights and the processes, procedures, and remedies available to her; denied her a hearing and an opportunity to speak with counsel; and failed to respond to her voicemails, emails, and questions about health insurance. *Id.* at 6; *see Banks v.*

<u>The administrative judge properly found that the appellant failed to prove her disability discrimination claim.</u>

¶13    To establish an affirmative defense of disability discrimination, an appellant first must prove that she is an individual with a disability as defined in the Americans with Disabilities Act (ADA), as amended by the ADA Amendments Act (ADAAA), and Equal Employment Opportunity Commission (EEOC) regulations. *Thome v. Department of Homeland Security*, 122 M.S.P.R. 315, ¶ 24 (2015). [9]  She may establish she has a disability by showing one of the following: (1) she has a physical or mental impairment that substantially limits one or more major life activities; (2) she has a record of such an impairment; or (3) she is regarded as having such an impairment. *Id.*  An impairment is considered to be a disability if it substantially limits an individual's ability to perform a major life activity as compared to most people in the general population. *Id.*

¶14    Here, the appellant alleged that the agency discriminated against her on the basis of her disability (deep vein thrombosis and post-thrombosis) when it removed her.  RAF, Tab 10 at 4-5, 12-13, Tab 12 at 4.  In her EEO declaration, she stated that her doctor prescribed her pain medication to take as needed for this condition, that she had a "little bit of difficulty with stairs and walking long distances," and that "[her condition] doesn't really affect [her] walking but it slows [her] down."  IAF, Tab 6, Subtab 4d.  She alleged below that she has trouble standing for long periods, walking long distances, and climbing stairs, but

*Department of the Air Force*, 4 M.S.P.R. 268, 271 (1980) (explaining that the Board generally will not consider an argument raised for the first time in a petition for review absent a showing that it is based on new and material evidence not previously available despite the party's due diligence).  Even if we were to consider these arguments, we would find that these alleged agency actions are not prohibited personnel practices.  *See* 5 U.S.C. § 2302(b).

[9] As a Federal employee, the appellant's disability discrimination claim arises under the Rehabilitation Act of 1973.  *Thome*, 122 M.S.P.R. 315, ¶ 23.  The EEOC regulations implementing the ADA and ADAAA have been incorporated by reference into the Rehabilitation Act, and the Board applies them to determine whether there has been a Rehabilitation Act violation.  *Id.*; 29 C.F.R. § 1614.203(b).

that "[s]he did not let her disability limit her ability to do her job." RAF, Tab 10 at 12. In the initial decision, the administrative judge found that the appellant did not submit any medical records containing a diagnosis of deep vein thrombosis and, therefore, concluded that she did not establish that she was an individual with a disability or a record of a disability. ID at 17. He further found that she was not regarded as having a disability based on the hearing testimonies of multiple agency management officials, who all testified that they had no knowledge of the appellant's disability prior to her removal. *Id.*

¶15    The appellant generally challenges these finding on review and submits, for the first time, the following two documents in support of her claim that she has a disability and that the agency was aware of it: (1) a September 14, 1999 notice from the Social Security Administration finding that she was not entitled to disability benefits; and (2) a roster of Field Supervisors showing, among other things, that the appellant claimed a disability of nonparalytic orthopedic impairments. PFR File, Tab 1 at 3, 9-13. Based on the markings on these documents and references in OCR's final agency decision, it appears that these documents are part of the report of investigation generated in connection with the appellant's EEO complaint. *Id.* at 9-13; IAF, Tab 6, Subtab 4, parts 1-2. Because the appellant has not shown that she could not have submitted these documents before the record closed below, we do not consider them for the first time on review. *See Avansino v. U.S. Postal Service*, 3 M.S.P.R. 211, 214 (1980) (stating that, under 5 C.F.R. § 1201.115, the Board generally will not consider evidence submitted for the first time with the petition for review absent a showing that it was unavailable before the record was closed despite the party's due diligence).

¶16    Having considered the record and the appellant's arguments on review, we find no basis to disturb the administrative judge's determination that the appellant failed to establish her disability discrimination affirmative defense.

**ORDER**

¶17    We ORDER the agency to cancel the appellant's removal and to reinstate her effective September 5, 2014. *See Kerr v. National Endowment for the Arts*, 726 F.2d 730 (Fed. Cir. 1984). The agency must complete this action no later than 20 days after the date of this decision.

¶18    We also ORDER the agency to pay the appellant the correct amount of back pay, interest on back pay, and other benefits under the Office of Personnel Management's regulations, no later than 60 calendar days after the date of this decision. We ORDER the appellant to cooperate in good faith in the agency's efforts to calculate the amount of back pay, interest, and benefits due, and to provide all necessary information the agency requests to help it carry out the Board's Order. If there is a dispute about the amount of back pay, interest due, and/or other benefits, we ORDER the agency to pay the appellant the undisputed amount no later than 60 calendar days after the date of this decision.

¶19    We further ORDER the agency to tell the appellant promptly in writing when it believes it has fully carried out the Board's Order and of the actions it has taken to carry out the Board's Order. The appellant, if not notified, should ask the agency about its progress. *See* 5 C.F.R. § 1201.181(b).

¶20    No later than 30 days after the agency tells the appellant that it has fully carried out the Board's Order, the appellant may file a petition for enforcement with the office that issued the initial decision on this appeal if the appellant believes that the agency did not fully carry out the Board's Order. The petition should contain specific reasons why the appellant believes that the agency has not fully carried out the Board's Order, and should include the dates and results of any communications with the agency. 5 C.F.R. § 1201.182(a).

¶21    For agencies whose payroll is administered by either the National Finance Center of the Department of Agriculture (NFC) or the Defense Finance and Accounting Service (DFAS), two lists of the information and documentation necessary to process payments and adjustments resulting from a Board decision

are attached. The agency is ORDERED to timely provide DFAS or NFC with all documentation necessary to process payments and adjustments resulting from the Board's decision in accordance with the attached lists so that payment can be made within the 60-day period set forth above.

## NOTICE TO THE APPELLANT REGARDING YOUR RIGHT TO REQUEST ATTORNEY FEES AND COSTS

You may be entitled to be paid by the agency for your reasonable attorney fees and costs. To be paid, you must meet the requirements set forth at Title 5 of the United States Code (5 U.S.C.), sections 7701(g), 1221(g), or 1214(g). The regulations may be found at 5 C.F.R. §§ 1201.201, 1201.202, and 1201.203. If you believe you meet these requirements, you must file a motion for attorney fees and costs WITHIN 60 CALENDAR DAYS OF THE DATE OF THIS DECISION. You must file your motion for attorney fees and costs with the office that issued the initial decision on your appeal.

## NOTICE OF APPEAL RIGHTS[10]

You may obtain review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all

---

[10] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) <u>Judicial review in general</u>**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be <u>received</u> by the court within **60 calendar days** of <u>the date of issuance</u> of this decision. 5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

> U.S. Court of Appeals
> for the Federal Circuit
> 717 Madison Place, N.W.
> Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) Judicial or EEOC review of cases involving a claim of discrimination**. This option applies to you <u>only</u> if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination. If so, you may obtain judicial review of this decision—<u>including a disposition of your discrimination claims</u>—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** <u>after you receive</u> this decision. 5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. ____ , 137 S. Ct. 1975 (2017). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** <u>after your representative</u> receives this decision. If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of <u>your discrimination claims only, excluding all other issues</u>. 5 U.S.C. § 7702(b)(1). You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** <u>after you receive</u> this decision. 5 U.S.C. § 7702(b)(1). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** <u>after your representative receives</u> this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C. 20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C. 20507

**(3) Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012**. This option applies to you <u>only</u> if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[11] The court of appeals must <u>receive</u> your petition for review within **60 days** of <u>the date of issuance</u> of this decision. 5 U.S.C. § 7703(b)(1)(B).

---

[11] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017. The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017. Pub. L. No. 115-195, 132 Stat. 1510.

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

FOR THE BOARD:                              /s/ for

                                           Jennifer Everling
                                           Acting Clerk of the Board
Washington, D.C.


# DFAS BACK PAY CHECKLIST

The following documentation is required by DFAS Civilian Pay to compute and pay back pay pursuant to 5 CFR § 550.805.  Human resources/local payroll offices should use the following checklist to ensure a request for payment of back pay is complete.  Missing documentation may substantially delay the processing of a back pay award.  **More information may be found at: https://wss.apan.org/public/DFASPayroll/Back%20Pay%20Process/Forms/AllItems.aspx.**

**NOTE:  Attorneys' fees or other non-wage payments (such as damages) are paid by vendor pay, not DFAS Civilian Pay.**

☐  1) Submit a **"SETTLEMENT INQUIRY - Submission"** Remedy Ticket.  Please identify the specific dates of the back pay period within the ticket comments.

Attach the following documentation to the Remedy Ticket, or provide a statement in the ticket comments as to why the documentation is not applicable:

☐  2) Settlement agreement, administrative determination, arbitrator award, or order.

☐  3) Signed and completed "Employee Statement Relative to Back Pay".

☐  4) All required SF50s (new, corrected, or canceled).  **\*\*\*Do not process online SF50s until notified to do so by DFAS Civilian Pay.\*\*\***

☐  5) Certified timecards/corrected timecards.  **\*\*\*Do not process online timecards until notified to do so by DFAS Civilian Pay.\*\*\***

☐  6) All relevant benefit election forms (e.g. TSP, FEHB, etc.).

☐  7) Outside earnings documentation.  Include record of all amounts earned by the employee in a job undertaken during the back pay period to replace federal employment.  Documentation includes W-2 or 1099 statements, payroll documents/records, etc.  Also, include record of any unemployment earning statements, workers' compensation, CSRS/FERS retirement annuity payments, refunds of CSRS/FERS employee premiums, or severance pay received by the employee upon separation.

**Lump Sum Leave Payment Debts:**  When a separation is later reversed, there is no authority under 5 U.S.C. § 5551 for the reinstated employee to keep the lump sum annual leave payment they may have received.  The payroll office must collect the debt from the back pay award.  The annual leave will be restored to the employee.  Annual leave that exceeds the annual leave ceiling will be restored to a separate leave account pursuant to 5 CFR § 550.805(g).



# NATIONAL FINANCE CENTER CHECKLIST FOR BACK PAY CASES

Below is the information/documentation required by National Finance Center to process payments/adjustments agreed on in Back Pay Cases (settlements, restorations) or as ordered by the Merit Systems Protection Board, EEOC, and courts.

1.      Initiate and submit AD-343 (Payroll/Action Request) with clear and concise information describing what to do in accordance with decision.

2.      The following information must be included on AD-343 for Restoration:

   a.      Employee name and social security number.
   b.      Detailed explanation of request.
   c.      Valid agency accounting.
   d.      Authorized signature (Table 63).
   e.      If interest is to be included.
   f.      Check mailing address.
   g.      Indicate if case is prior to conversion.  Computations must be attached.
   h.      Indicate the amount of Severance and Lump Sum Annual Leave Payment to be collected (if applicable).

Attachments to AD-343

1.      Provide pay entitlement to include Overtime, Night Differential, Shift Premium, Sunday Premium, etc. with number of hours and dates for each entitlement (if applicable).
2.      Copies of SF-50s (Personnel Actions) or list of salary adjustments/changes and amounts.
3.      Outside earnings documentation statement from agency.
4.      If employee received retirement annuity or unemployment, provide amount and address to return monies.
5.      Provide forms for FEGLI, FEHBA, or TSP deductions. (if applicable)
6.      If employee was unable to work during any or part of the period involved, certification of the type of leave to be charged and number of hours.
7.      If employee retires at end of Restoration Period, provide hours of Lump Sum Annual Leave to be paid.

NOTE:  If prior to conversion, agency must attach Computation Worksheet by Pay Period and required data in 1-7 above.

The following information must be included on AD-343 for Settlement Cases:  (Lump Sum Payment, Correction to Promotion, Wage Grade Increase, FLSA, etc.)

   a.      Must provide same data as in 2, a-g above.
   b.      Prior to conversion computation must be provided.
   c.      Lump Sum amount of Settlement, and if taxable or non-taxable.

If you have any questions or require clarification on the above, please contact NFC's Payroll/Personnel Operations at 504-255-4630.